## Personal Discount Company v. Lincoln Tire Company

*James E. Riely*, of *White, Williams & Scott*, for plaintiff.

*Joseph E. Gold* and *Paul M. Chalfin*, for defendants.

MACNEILLE, P. J., March 3, 1949.—We are considering defendants' petition and rule to show cause why a judgment entered against them should not be opened.

On November 5, 1947, plaintiff, Personal Discount Company, caused judgment to be entered against defendants, Lincoln Tire Company and Harry Kravitz, individually and trading as Lincoln Tire Company, on the endorsement of four judgment notes executed by certain customers of defendants and sold and assigned to plaintiff for value with full recourse. Pursuant to the entrance of the judgment, plaintiff issued a writ of fieri facias upon the property of defendants. Subsequently a rule to show cause why the judgment should not be opened was allowed by the court on January 26, 1948. On February 18, 1948, defendants' depositions were taken and on March 2, 1948, plaintiff's depositions were taken.

In the amended petition defendants aver as grounds for opening the judgment the following:

On April 15, 1947, defendants entered into an agreement with plaintiff whereby defendants would sell certain leases of personal property for a sum less than the price agreed to be paid by the purchasers; that judgment notes and the leases executed by the lessees were assigned and hypothecated to plaintiff who in turn paid defendants the amount of the notes, less the discount and general purchase reserve and stamp tax; that the leases so purchased and in dispute here were subject to a full recourse agreement; that collec-

tion of the sums due by the lessees were to be made and if full collection were not made, then defendants agreed to pay the sums remaining unpaid; that in all such cases the reserve set aside by the company was to be returned to defendants in case the lessee paid the entire amount of the payments; that a claim was made on the judgment notes assigned and discounted to plaintiff; that defendants requested plaintiff to pay to them reserves on various recourse accounts heretofore collected by plaintiff which were in excess of the amount of the notes and plaintiff refused such payment; that defendants have a complete and full defense to plaintiff's claim and pray that plaintiff be ordered to account for the total amount of reserves on all full recourse leases which will reveal a credit due defendants, and that the judgment should be opened for the additional reason that the finance charges collected by plaintiff were in excess of the legal rate of interest.

Plaintiff filed an answer thereto denying generally the allegations of the petitions and depositions were taken by both parties.

An application to open a judgment is an equitable proceeding addressed to the sound discretion of the court and if the testimony taken on the rule to open would be sufficient to justify the submission of the question to a jury, the court may, in its discretion, make an order to open; but, if, on the testimony so taken, the court would set aside a verdict for defendant, the court should refuse to open. See Schuylkill Trust Co. v. Sobolewski, 325 Pa. 422. In Stoner v. Sley System Garages, 353 Pa. 532, at page 535, the Supreme Court restated the long established rules in such proceeding as the one before us and quoted from Mutual B. & L. Assn. of Shenandoah v. Walukiewicz et al., 322 Pa. 240, as follows:

" 'An oath against an oath or a mere conflict of evidence do not warrant the submission of the issue to a jury. The evidence must carry such conviction of truth as to convince the judge that the judgment should be opened and a jury trial awarded: Mielcuszny et ux. v. Rosol, 317 Pa. 91. The weight of evidence and credibility of the witnesses are for the judge who sits as a chancellor: Jenkintown Nat. Bank's App., 124 Pa. 337, 344; Augustine v. Wolf, 215 Pa. 558, 562.' "

We find no merit to the first reason advanced by defendants for opening of the judgment. In the depositions defendants testified that there was a running account between plaintiff and defendants, and there was an understanding that a certain part of the face of each note was to be treated as a reserve to meet the situation as to other notes that might not be fully paid, and that in any attempt by plaintiff to have recourse on any unpaid note, defendants should be given credit for reserves that were not used on other notes that had been fully paid to plaintiff. This oral agreement is flatly contradicted by plaintiff in its depositions. There is nothing in the judgment notes containing such an understanding.

We must assume the full agreement of the parties was contained in the written obligation and it cannot be contradicted by parol evidence. Further, the only evidence of the oral agreement is the testimony of defendants, which is denied. Where, as here, we have only an oath against an oath the court in its discretion would not be justified in opening the judgment.

The other defense raised by defendants is that the finance charges collected by plaintiff were in excess of the legal rate of interest and in some cases amounted to as high as 25 percent of the obligation on the notes. We do not believe there is any merit to this argument. Defendants in this case sold merchandise to their customers on a bailment lease for a sum equal to the

value of the goods plus a monthly budget charge until the obligation was paid off. This obligation was secured by a judgment note executed by the customers. Defendants, as holders of the judgment notes and leases, sold them in the usual course of business to plaintiff at a discount. Whether such a transaction comes within the usury law is governed by the Act of May 28, 1858, P. L. 622, sec. 2, 41 PS §4, which provides:

"When a rate of interest for the loan or use of money, exceeding that established by law, shall have been reserved or contracted for, the borrower or debtor shall not be required to pay to the creditor the excess over the legal rate; and it shall be lawful for such borrower or debtor, at his option, to retain and deduct such excess from the amount of any such debt; and in all cases where any borrower or debtor shall heretofore, or hereafter, have voluntarily paid the whole debt or sums loaned, together with interest exceeding the lawful rate, no action to recover back any such excess shall be sustained in any court of this commonwealth, unless the same shall have been commenced within six months from and after the time of such payment: Provided always, That nothing in this act shall affect the holders of negotiable paper, taken bona fide in the usual course of business."

Certainly there is no question of usury as between defendants and their customers. It is immaterial that the time-sale price exceeds the cash price of the merchandise sold to the customers, and under such circumstances the extra charge for financing is no evidence of usurious interest. See Melnicoff v. Huber Investment Co., 12 D. & C. 405; General Motors Acceptance Corp. v. Freeman, Secretary of Banking, 63 D. & C. 163; Lansdowne Finance Co. v. Prusky, 120 Pa. Superior Ct. 555; Equiable Credit and Discount Co. v. Geier, 342 Pa. 445. See also Webb, Usury, par. 72.

As between plaintiff and defendants, no question of usury was involved as plaintiff merely bought notes from defendants without lending them any money. A sale of negotiable instruments is not subject to the usury laws. Usury arises between borrower and lender, not between successive purchasers of obligations already created. See Seltzer v. Sokoloff, 302 Pa. 449; Lansdowne Finance Co. v. Prusky, 120 Pa. Superior Ct. 555.

Therefore, the rule of defendants is discharged.